IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VILT LAW, P.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:22-cv-4217 |
| | § | |
| v. | § | |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**EMERGENCY MOTION OF DEFENDANT
TO DISSOLVE EX PARTE TEMPORARY RESTRAINING ORDER**

Pursuant to Federal Rule of Civil Procedure 65, Defendant JPMorgan Chase Bank, N.A. ("Chase") moves for an emergency order to dissolve the ex parte Temporary Restraining Order ("Ex Parte TRO," ECF No. 6) entered by the Court without notice on December 8, 2022, and states as follows:

## I.        INTRODUCTION

This lawsuit is based on a fiction.  Plaintiff is a law firm and purported escrow agent that claims it never received a $25,000,000 wire transfer allegedly sent to Chase from a Swiss bank. But this money never went to Chase, and Plaintiff appears to be the victim of a scam.  Without notice to Chase of its Complaint or its request for a TRO—or even trying to notify Chase—Plaintiff obtained the Ex Parte TRO, which ostensibly requires Chase to deposit $25,000,000 in the Court's registry within three business days.  Respectfully, this was procedurally improper, and compliance with the Ex Parte TRO is impossible.

The Ex Parte TRO is procedurally improper because Plaintiff failed to follow Rule 65(b)'s strict requirements to obtain a no-notice temporary restraining order.  Plaintiff sought and obtained the Ex Parte TRO without providing Chase with any notice or certifying in writing Plaintiff's

efforts to provide notice and the reasons why notice could not be provided.  This failure is prejudicial to Chase.  Had Chase been given an opportunity to be heard before injunctive relief was entered, Chase would have shown the Court that ***Chase has no record of receiving this wire transfer***.[1]  *See* Ex. A, Declaration of Ana M. Sauceda.  The "Funds" that Plaintiff seeks to enjoin and compel, now the subject of an affirmative injunction order, are not and have never been in Chase's possession.  Based on Chase's initial and ongoing investigation, ***this wire transfer never happened***.

Because of this, Plaintiff cannot carry its substantive burden to obtain injunctive relief.  The wire transfer, along with the documents purporting to evidence the wire on which Plaintiff relied and submitted to the Court, appear to have been fabricated.  The Ex Parte TRO thus commands Chase to deposit money that it does not have, and Chase cannot comply with the Ex Parte TRO.  As a result, Plaintiff's request for injunctive relief is not a request to protect a specific piece of property from immediate loss, but a demand for $25,000,000 from Chase's coffers.  Thus, Plaintiff cannot succeed on the merits, Plaintiff cannot face a substantial threat of irreparable harm if this injunction is not granted, the harm to Chase from the injunction—ordering Chase to deposit $25,000,000 of its own money—will outweigh Plaintiff's purported harm, and the injunction would disserve the public interest by entering this injunction.

The Court should dissolve the Ex Parte TRO under Rule 65(b)(4) and, at minimum, set a hearing to allow Chase to be heard before any preliminary injunctive relief is awarded.

## II.      <u>BACKGROUND</u>

On December 6, 2022, Plaintiff filed its Original Complaint ("Complaint," ECF No. 1).  Plaintiff claims it is an escrow agent for a real estate project.  Compl. ¶ 5.  Plaintiff contends that,

---

[1] Because of the emergency nature of this relief, Chase has provided initially an affidavit of the Branch Manager of Plaintiff's accounts referenced in the Complaint, but it can and will provide additional support to the Court.

on October 10, 2022, an entity called "HPS Production AB" initiated a wire transfer of $25,000,000 from UBS Switzerland to UBS Europe SE to Chase. *Id.* Plaintiff says that the wire instructions required the money to be deposited in Plaintiff's IOLTA account, but that Chase allegedly "failed to and refuses to tender the Funds" to Plaintiff. *Id.* Among other relief, Plaintiff seeks actual damages of $25,000,000 and exemplary damages of $50,000,000 from Chase. *Id.* ¶¶ 30, 31.

Also on December 6, Plaintiff filed its TRO Application. Plaintiff asked the Court to order Chase to restrain Chase "from transferring the subject $25,000,000 other than to the Court's Registry and that the Court order JPMorgan Chase Bank, N.A. to tender the Funds to the Court Registry within three (3) business days of its receipt of the Court's Order." TRO Application ¶ 19. In blatant violation of Rule 65(b)(1)(B), Plaintiffs' TRO Application did not request that the requested injunction be entered *ex parte*, nor did counsel certify in writing any efforts to give notice to Chase or reasons why such notice could not be given.

The Court issued a Summons to Chase on December 6, 2022. [ECF No. 5.] Before Chase was served with the Complaint, the Summons, or the Application for Injunctive Relief, the Court entered Plaintiff's requested temporary restraining order ex parte. [ECF No. 6.]

### III.    LEGAL STANDARD

Rule 65(b)(1)(a) permits the issuance of "a temporary restraining order without oral notice to the adverse party or its attorney only if":

- "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," Fed. R. Civ. P. 65(b)(1)(A); *and*

- "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required," *id.* 65(b)(1)(B).

Rule 65(b)(2) sets forth the contents for "[e]very temporary restraining order issued without notice." Every TRO must identify the "date and hour it was issued," "describe the injury and state why it is irreparable," or "state why the order was issued without notice." Fed. R. Civ. P. 65(b)(2). This Court's procedures emphasize, "<u>Ex Parte</u> applications for restraining orders will not be entertained by the court unless the requirements of Fed. R. Civ. P. 65(b) have been satisfied." Court Procedures, https://www.txs.uscourts.gov/sites/txs/files/Courtroom%20Procedures_0.pdf.

Rule 65 provides that "[o]n 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move to dissolve or modify the order." Fed. R. Civ. P. 65(b)(4).

## IV.   <u>ARGUMENT</u>

### A.   <u>The Ex Parte TRO Is Improper Because Plaintiff Failed to Comply with Rule 65(b).</u>

First, the Ex Parte TRO should be dissolved because Plaintiff flouted Rule 65(b)(1)(A) and (B) in seeking a no-notice TRO. While Plaintiff presented inquiries to his Chase branch about the status of the purported wire transfer, Plaintiff made ***no effort*** to notify Chase that it would be seeking an ex parte TRO or of the Ex Part TRO itself. To obtain the Ex Parte TRO without notice, Rule 65(b)(1)(B) required Plaintiff to submit a certification from counsel, in writing, describing Plaintiff's efforts to give notice to Chase and offering the reasons why notice should not be required Plaintiff. The affidavits that Plaintiff attaches to its Complaint and TRO Application offer no such certification. [*See* ECF No. 1-1, 3-1.] Plaintiff cannot obtain a no-notice TRO without fulfilling these requirements. *See Buck v. Deutsche Bank Nat'l Tr. Co.*, No. 05-3676 SECTION: "R" 3, 2005 U.S. Dist. LEXIS 17736, at *2 (E.D. La. Aug. 4, 2005) (denying application for TRO

without notice because plaintiffs "failed to comply with Rule 65's requirements for the issuance of such an order").

Plaintiff also offers no specific facts that would show immediate and irreparable injury if the injunctive relief was not entered without notice, as Rule 65(b)(1)(A) mandates.  In fact, any such assertions would have contradicted Plaintiff's own pleading.  The TRO Application alleges immediate and irreparable harm will occur if Plaintiff does not receive the funds by December 31, 2022, *see* TRO Application ¶ 18, over two months after the alleged wire was supposed to arrive and three weeks after Plaintiff filed the Complaint and the TRO Application.  Adequate time remained for Chase to respond to the TRO Application and be heard.  Plaintiff's allegations cannot justify the entry of the Ex Parte TRO under Rule 65(b)(1)(A).

Plaintiff's failure to comply with the notice requirements under Rule 65(b) justifies vacating the Ex Parte TRO.  *See, e.g.*, *Lapa v. JPMorgan Chase Bank, N.A.,* No. 21 Civ. 04737 (NSR), 2022 U.S. Dist. LEXIS 143901, at *11–12 (S.D.N.Y. Aug. 11, 2022) (dissolving state court TRO that was issued without notice and did not satisfy Rule 65(b)).

**B.**     **Plaintiff Did Not Establish Entitlement to Injunctive Relief.**

Not only did Plaintiff fail to satisfy the procedural requirements to obtain the Ex Parte TRO, it also failed to carry its substantive burdens.  To obtain a TRO, a plaintiff must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).  "A preliminary injunction is an 'extraordinary remedy' and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements."  *Planned Parenthood of Houston &*

*S.E. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) (internal quotation marks and citation omitted).

The Court should dissolve the Ex Parte TRO because Plaintiff has established none of the four required factors.  Plaintiff has no chance of succeeding on the merits.  The attached declaration from Chase's Branch Manager, who is familiar with Plaintiff and his allegations of this purported wire, shows that Chase never received the wire that Plaintiff alleges is missing.  Indeed, Chase's review of the available information to date suggests that this wire simply does not exist.  Indeed, Plaintiff has not presented any competent evidence showing that this $25 million wire was ever sent.  *See* Ex. A ¶¶ 3–4.  The so-called SWIFT wire report is not authenticated by a competent witness, and Plaintiff does not say where it obtained these exhibits.[2]  Plaintiff includes no authenticated evidence from UBS showing that this wire was ever initiated, and Chase expects— based on the information currently available—that it will establish that the supposed wire transfer was never received by Chase.  Of course, Chase could not receive what was never sent.

In fact, Plaintiff attached to the Complaint a supposed email communication, Exhibit 8, which purports to be an email from UBS to Plaintiff's Chase Branch Manager.  But Chase's Branch Manager has no record of receiving this email.  *See* Ex. A ¶ 5 ("I have reviewed the document attached as Exhibit 8 to Plaintiff's Original Complaint, which purports to be an email set to me by UBS.  I have reviewed my email and confirmed that I never received that email.").  Plaintiff's evidence appears to come not from a bank or other legitimate source, but his client or other third party.  None of the evidence he presents is properly authenticated with "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  Plaintiff's

---

[2] Exhibit 1 to the Complaint [ECF No. 1-2] has indications of fraud, particularly of what is called a "MT 103 scam." A Google search of MT 103 wire fraud can help explain how these scams are commonly structured.

allegations are baseless and without evidentiary support and cannot justify the extraordinary relief of a TRO.

At bottom, it appears that Plaintiff is the victim of a scam and has improperly obtained the Ex Parte TRO without competent evidence showing that Chase ever received this money.  And because Plaintiff has no evidence to support his claim, it cannot carry its burden.  The purpose of injunctive relief is to preserve the status quo, yet the Ex Parte TRO, granted without notice, improperly compels Chase to go beyond what is within its control or custody.  *See* Ex. A ¶ 4. Injunctive relief will not prevent any irreparable harm, as Chase never possessed this money in the first place.  Chase is not depriving Plaintiff of his money, and there are no credible allegations that Chase knows where Plaintiff's money is or that Chase has any control over it.   Simply put, there are no funds belonging to Plaintiff for Chase to deposit.   And requiring Chase to deposit $25,000,000 with the Court's registry without evidence that Chase ever received this wire transfer is unjust and prejudicial to Chase.

## **CONCLUSION**

For these reasons, Defendant JPMorgan Chase Bank, N.A. requests that the Court: (1) grant its Emergency Motion to Vacate *Ex Parte* Temporary Restraining Order; (2) issue an order that the *ex parte* Temporary Restraining Order entered by the Court on December 7, 2022, be vacated; and (3) grant Chase such other and further relief to which it is justly entitled.

Respectfully submitted,

**GREENBERG TRAURIG LLP**

/s/ *Mary-Olga Lovett*
Mary-Olga Lovett
 State Bar No. 00789289
 lovettm@gtlaw.com
Christopher S. Dodrill
 State Bar No. 24110696
 dodrillc@gtlaw.com
Jeremy Wallace
 State Bar No. 24110825
 jeremy.wallace@gtlaw.com
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**ATTORNEYS FOR DEFENDANT
JPMORGAN CHASE BANK N.A.**

## **CERTIFICATE OF CONFERENCE**

In accordance with L.R. 7.1, I conferred by phone with counsel for Plaintiff about the relief sought herein and could not reach an agreement on the disposition of this motion.

*/s/ Christopher S. Dodrill*
Christopher S. Dodrill

## **CERTIFICATE OF SERVICE**

On December 8, 2022, this document was electronically filed through the Court's CM/ECF system, which will send notices of electronic filing to all counsel of record.

*/s/ Christopher S. Dodrill*
Christopher S. Dodrill